Cite as 2020 Ark. 74

# SUPREME COURT OF ARKANSAS

No. CV-18-594

|  |  |
|---|---|
| | **Opinion Delivered:** February 20, 2020 |
| LAKSHMINARAYANA CHEKURI<br>APPELLANT | |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>FIFTEENTH DIVISION |
| MADHURI NEKKALAPUDI<br>APPELLEE | [NO. 60DR-16-1602]<br><br>HONORABLE RICHARD MOORE,<br>JUDGE<br><br>AFFIRMED; COURT OF APPEALS'<br>OPINION VACATED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Lakshminarayana Chekuri appeals from the Pulaski County Circuit Court's order, which granted him a divorce from appellee Madhuri Nekkalapudi, divided the parties' marital property, and awarded alimony to Nekkalapudi. For reversal, Chekuri argues that the circuit court erred in (1) awarding to Nekkalapudi one-half of the marital funds spent by him during the parties' separation, (2) ordering that the marital assets be divided equally, and (3) awarding rehabilitative alimony to Nekkalapudi. We affirm and vacate the court of appeals' opinion.

The parties entered into an arranged marriage in India on February 12, 2015, and they separated on December 27, 2015. On April 21, 2016, Chekuri filed a complaint for

divorce and requested that the parties' property rights and debt responsibilities be adjudicated. On the same day, the circuit court entered a restraining order, enjoining the parties from "selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of, or removing from the jurisdiction of this Court, any of the property belonging to the parties, except in the ordinary course of business, or except by agreement of the parties, or except by the further Orders of the Court."

Nekkalapudi filed a counterclaim and two amended counterclaims for divorce, wherein she requested temporary and rehabilitative spousal support, as well as repayment for expenses associated with the parties' wedding and/or an unequal division of the marital estate. Chekuri later amended his complaint for divorce to state that he also reserved the right to request an unequal distribution of property.

The circuit court held hearings on Nekkalapudi's claim for temporary support on October 24 and November 28, 2016, and January 11, 2017. Nekkalapudi testified that she had attended medical school in India and received her MBS degree, which she indicated was equivalent to a Doctor of Medicine degree. She moved to Little Rock to live with Chekuri in May 2015 after the parties' wedding and after she finished an internship. She testified that Chekuri had verbally and physically abused her beginning in June 2015.

Nekkalapudi stated that she cannot practice medicine in the United States until she completes the licensing procedure, which is composed of three steps and associated examinations followed by a three-year residency program. According to Nekkalapudi, she and Chekuri had discussed that she would be financially dependent on him until she was

accepted into a residency program. She testified that she moved to Virginia to live with her parents in December 2015 because the preparatory course for the first step of the licensing examination was not offered in Arkansas. She planned to return to Arkansas in May 2016 after completion of the course but was then served with the divorce complaint.

Nekkalapudi testified that Chekuri had not supported her financially since she left for Virginia. She stated that she was currently borrowing money from her father to pay for her expenses but that she was expected to reimburse him when she obtained employment. While she received a $25,000 necklace from Chekuri when they got married, Nekkalapudi testified that her father was keeping it as collateral for the funds she had borrowed. She introduced a rehabilitation plan that listed the amount of support she needed until entering a residency program and asked for $7,600 in a lump sum for upfront costs associated with the examinations and approximately $5,500 per month for 44-56 months. Nekkalapudi indicated that it takes 10-12 months to prepare for each licensing exam.

Chekuri testified that he had been employed as a psychiatrist at Mercy Hospital in Joplin, Missouri since July 1, 2016. He stated that he had also been pursuing a doctoral degree from the University of North Texas since 2007 and that he conducted research on homelessness as part of that program. He indicated that, as with Nekkalapudi, he had to undergo medical licensing examinations and complete a residency program to become a licensed physician in this country. He testified that he underwent these examinations between 2006 and 2011. Chekuri indicated that his gross salary at the time of the temporary hearings was $250,000 per year and that his net income after taxes and

retirement was $7,091.47 per bi-monthly pay period. Before July 2016, he was employed as a resident at the University of Arkansas for Medical Sciences ("UAMS"), and he stated that his monthly income at that time was $4,800–$5,000 per month. Chekuri admitted that he had also received a $30,000 bonus when he signed his contract with Mercy Hospital, although he testified that it would not be fully earned until he had completed two years of employment.

According to Chekuri's October 2016 affidavit of financial means, his monthly expenses totaled $12,661.16. This included $2,100 in rent for his residences in Bella Vista, Arkansas and Joplin, Missouri; $1,800 in food; and $5,997 in "other" expenses, which he listed separately, such as $4,000 for "education and research" and $1,126 in monthly debt payments. His affidavit listed his total debt in October 2016 as $62,127.33, including a $48,200 line of credit at One Bank, and his cash on hand and in bank accounts was listed as $9,203.55. According to Chekuri, the $4,000 per month was self-funded research, which he testified was necessary for him to complete his doctoral degree.

On January 20, 2017, the circuit court entered an order awarding Nekkalapudi temporary spousal support of $2,500 per month beginning in January 2017 until further order of the court. At a review hearing on June 21, 2017, Chekuri introduced a current affidavit of financial means demonstrating that his monthly income had remained the same but that his monthly expenses had increased to $18,427.88. He attributed this increase to the spousal support and to larger payments toward his debt. The affidavit listed his current total debt as $72,135.78, with monthly payments of $5,474, and cash on hand

4

was listed as $2,893.25. According to Chekuri, his line of credit at One Bank was opened shortly before the wedding and was used by Nekkalapudi to purchase a $25,000 gold necklace. He testified that the loan had matured in February 2017 and that he had to increase his monthly payments to $5,000 for the next several months.

Nekkalapudi testified that she had been searching for employment since January but had not been successful. She stated that she was currently working part time for her father for $500 per month and attending a preparation course for her medical-licensing exams. Although she was currently able to meet her monthly expenses, she indicated that this was because she was living with her parents, and she requested an increase in temporary alimony to $4,000.

The circuit court declined to modify alimony pending the final divorce hearing, which was held on August 3, 2017. Nekkalapudi testified at the hearing that in addition to the alimony, she was currently earning $540 per month from her employment with her father. Her current affidavit of financial means listed monthly expenses of $4,407, cash on hand of $1,240, and investments worth $440. She indicated that, although she was still living with her parents rent-free, she had to pay a portion of the utilities, in addition to her phone bill, car payment, health insurance, pet expenses, and personal-care items. Nekkalapudi further testified that she owed her father and her uncle more than $55,000 in wedding-related expenses, along with her personal debt to her father of $48,020 and credit card debt of $4,178. She stated that she had paid for the first part of her licensing exam

5

but had not yet taken it, and she introduced a two-year match-program plan from the preparation course that she was following.

Nekkalapudi prepared a summary of each party's assets that she alleged comprised the marital estate. According to this document, Chekuri had $176,668.60 in marital assets, in addition to his retirement accounts worth approximately $20,000, while Nekkalapudi's assets were $1,244.92. Nekkalapudi testified that she had included Chekuri's withdrawals from his checking accounts, which were in excess of $86,000 in 2016 alone, a vehicle that he gave to a colleague, and transfers of funds to India. She stated that there was no documentation of where he had spent the funds that he had withdrawn and that she was asking the circuit court to treat these funds as a marital asset. Nekkalapudi requested that the marital estate be distributed by awarding her the funds in her checking account, half of Chekuri's retirement, and $87,711.84 in cash, which was one-half of Chekuri's other assets listed on her exhibit. Nekkalapudi also introduced Chekuri's bank statements from 2013 onward in support of her request. She stated that Chekuri had $7,000–8,000 in his accounts when the divorce complaint was filed but only $1,200 by the time of the hearing. She testified that this was unreasonable given his salary and that she believed he was either sending the money to India or was holding it in cash. With regard to spousal support, Nekkalapudi requested rehabilitative alimony of $4,400 for two years, which would cover her monthly expenses until she entered a residency program.

Chekuri's most recent affidavit of financial means revealed that he had received a raise and was now earning more than $270,000 per year, with a bimonthly net income of $7,719.27. The affidavit reflected that Chekuri's cash on hand was $3,895.75 and that his retirement account was worth $21,312.99. His current monthly expenses were listed as $18,559.40, and his indebtedness totaled $66,714.74, with monthly payments of $5,503. He explained that the $4,000 in education and research expenses each month included fees for his doctoral program as well as payments for client recruitment and incentives to the homeless for their interviews. He indicated that he hoped to receive his doctorate within one year.

According to Chekuri, his cash withdrawals were high because he preferred to pay for expenses in either cash or cashier's checks, including his rent, utilities, and alimony. He agreed that his credit-card payments, phone bill, retirement-account contributions, insurance payments, and tuition payments were not paid in cash. While his withdrawals increased substantially in 2016, he attributed this to his increased salary, his increased payments toward the line of credit with One Bank, and the relocation expenses associated with his new job. With regard to the transfers of cash to India, Chekuri testified that these funds were sent to relatives so that he would have cash while there for the wedding and to pay for wedding-related expenses. He denied that he had any cash other than what was reflected on his bank statements. He also stated that he had donated a vehicle to a co-worker but that it was an old vehicle in need of repair. Chekuri disagreed that it was understood between the parties that he would be the financial provider when they got

married. He further stated that Nekkalapudi had access to plenty of resources from her family and that the alimony was not her only source of funds.

Following the hearing, both parties submitted briefs outlining their positions. Nekkalapudi argued in her brief that no unique or extraordinary circumstances existed to support an unequal distribution of the marital assets in favor of Chekuri. To the contrary, she claimed that he had converted in excess of $100,000 of marital funds into cash since filing his complaint for divorce and that if either party was entitled to an unequal division, it was her. She further contended that Chekuri had violated the April 2016 restraining order by withdrawing these large sums in cash, which was inconsistent with how he had operated prior to the parties' separation. Nekkalapudi asserted that Chekuri's testimony regarding the disposition of these funds was not credible, particularly the money that he claimed to have spent on self-funded research that was unsupported by documentation or any other evidence. She argued that his actions had deprived her of her marital interest in these assets. In order to achieve equity, Nekkalapudi requested that the circuit court either (1) award her one-half of the marital estate, including the 2016–2017 cash withdrawals and transfers amounting to $136,831, and require each party to pay his or her own debt; (2) award her the entire amount of the funds that Chekuri had converted and one-half of the remaining marital estate, with each party responsible for his or her own debt; or (3) award one-half of the marital estate to each party, order Chekuri to pay all debts incurred during the marriage, and award her $4,000 in alimony for three years.

8

In his brief, Chekuri asserted that the parties' marriage was short and their period of cohabitation even shorter—approximately four months. He argued that during this time, he had averaged $5,000 in monthly net income and that this defined the standard of living between the parties, not his increased salary beginning in July 2016. He contended that Nekkalapudi should not receive any additional alimony because she had failed to seriously pursue her license to practice medicine or other employment, she had assets in the form of gold jewelry that he had given her, and she was receiving support from her parents. With regard to his cash withdrawals, Chekuri claimed that they were for normal, ordinary living expenses and that it was typical in the Indian culture to pay in cash. If the circuit court was inclined to award Nekkalapudi a portion of these withdrawals or of his retirement, Chekuri requested that he receive an unequal distribution in his favor.

The divorce decree was entered on March 19, 2018. The circuit court found that Chekuri was entitled to an absolute divorce from Nekkalapudi based on eighteen months of continuous separation since December 27, 2015; that Nekkalapudi was awarded one-half of Chekuri's retirement that had accrued from the date of the parties' marriage until entry of the decree; that Nekkalapudi should receive $68,415.50 as one-half of the marital funds Chekuri had spent during the course of the parties' separation, to be paid in installments for eighteen months; that Nekkalapudi was awarded all gifts and jewelry that Chekuri had given her during the marriage; that each party was awarded the property currently in his or her possession; and that each party was responsible for the debts in his or her name, including the marital debt in Chekuri's name. As to alimony, the court

found that Nekkalapudi had a temporary financial need and that Chekuri not only had the ability to pay but was also in a superior financial and educational position to Nekkalapudi. As a result, the circuit court awarded $1,000 per month in spousal support to Nekkalapudi for a period of eighteen months.

Chekuri filed a timely notice of appeal from the divorce decree. Following the court of appeals' opinion reversing and remanding the circuit court's order, Nekkalapudi filed a petition for review, which this court granted. When we grant a petition for review, we treat the appeal as if it had originally been filed in this court. *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58.

*Division of Property*

In his first point on appeal, Chekuri argues that the circuit court erred by equally dividing the funds that he spent during the parties' separation. He contends that Nekkalapudi was entitled to a division of these marital funds only if she proved that he spent them with the intent to defraud her. Chekuri asserts that she failed to meet this burden, and further, that the circuit court made no finding of fraud.

We review divorce cases de novo on appeal. *Moore v. Moore*, 2019 Ark. 216, 576 S.W.3d 15. However, the circuit court's findings pertaining to the division of property will not be reversed unless they are clearly erroneous or against the preponderance of the evidence. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36. We also give due deference to the circuit court's

determination of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

Pursuant to Arkansas Code Annotated section 9-12-315(b) (Repl. 2015), all property acquired by either spouse subsequent to the marriage is considered marital property, with certain exceptions not applicable here. This includes property acquired after separation but prior to the entry of the divorce decree. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007).

Chekuri relies on this court's decision in *Skokos v. Skokos*, 332 Ark. 520, 968 S.W.2d 26 (1998), in support of his argument that Nekkalapudi was not entitled to a portion of the marital funds that he spent during their separation.[1] In *Skokos*, the appellant (Ms. Skokos) requested a reimbursement for one-half of the money placed in trust by Mr. Skokos to benefit the parties' children because she alleged that the transfer was made without her knowledge or consent. She further sought a portion of the funds Mr. Skokos had paid to a business associate in satisfaction of a marital debt. The circuit court found that these were valid expenditures and refused to make Mr. Skokos repay these amounts. On appeal, we explained that

> [i]n a divorce action, a spouse may recover his or her interest in marital property that the other spouse has transferred if the latter made the transfer for the purpose of defrauding the former of his or her interest in the property. *Pierson v. Barkley*, 253 Ark. 131, 133, 484 S.W.2d 872, 873 (1972); *Dowell v. Dowell*, 207 Ark. 578, 182 S.W.2d 344 (1944).

---

[1]Although Chekuri also cites to opinions by our court of appeals, we are not bound by such precedent. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 568 S.W.3d 624.

11

In *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975), the wife was granted a divorce but appealed the Chancellor's division of property. We reversed and remanded, in part, because the Chancellor had failed to make an award to the wife for personal property that her husband had fraudulently transferred. We said that

> there was a preponderance of the evidence to show that there was a wrongful disposition of personal property by appellee to defeat appellant's marital interest and that it was error for the court to refuse to consider or make any order concerning items removed by appellee. An extensive enumeration of these items was made by appellant and it was not substantially contradicted. *See Carr v. Carr*, 226 Ark. 355, 289 S.W.2d 899. *See also*, *Austin v. Austin*, 143 Ark. 222, 220 S.W. 46; *Wilson v. Wilson*, 163 Ark. 294, 259 S.W. 742.

*Ramsey v. Ramsey*, 259 Ark. at 23, 531 S.W.2d at 33. *See also Hardy v. Hardy*, 228 Ark. 991, 995, 311 S.W.2d 761, 763–64 (1958) ("A husband has the right to make a transfer of his property, either with or without consideration, even though he strips himself of all means of supporting his wife, and leaves her without the means of subsistence, provided that he does so in good faith and without intention of defrauding her of her just claims upon him and his estate.") (citation omitted).

*Skokos*, 332 Ark. at 535–36, 968 S.W.2d at 34.  In affirming the circuit court's finding with

respect to the transfer to the trust, we stated:

> Whether or not Ms. Skokos was aware of, or consented to, the creation of Trust No. 3 and the $60,000 gift to her children that was authorized by the trust, we know of no authority that entitles a spouse to be reimbursed in a divorce proceeding for every nonconsensual transfer of marital funds made by the other spouse. Under the rule announced in *Pierson v. Barkley*, *supra*, and *Ramsey v. Ramsey*, *supra*, and the other cases cited above, it was necessary for Ms. Skokos to prove that Mr. Skokos effectuated that transfer of marital property (the $60,000) with the specific intent to defraud Ms. Skokos of her interest in that property. Proof of that sort is clearly lacking in the record.

*Id.* at 540, 968 S.W.2d at 36.[2]  We also affirmed the circuit court's ruling that appellant was not entitled to be reimbursed for repayment of the loan:

> The propriety or lack of propriety, other than in the context of the relationship between Mr. and Ms. Skokos, of the payments to Mr. Nelson is not at issue in this appeal. Rather, as noted above, we are concerned with whether the payments were made to defraud Ms. Skokos of her marital interest in the funds. "Ordinarily, we do not reverse a chancellor where the decision turns largely on disputed facts and witness credibility, as we accede to [her] superior position to observe the witnesses and gauge their demeanor." *Dopp v. Sugarloaf Mining Co.*, 288 Ark. 18, 21, 702 S.W.2d 393, 394 (1986). The ruling was not clearly erroneous.

Chekuri contends that, as in *Skokos*, Nekkalapudi failed to prove that his withdrawals and transfers of funds were made with the specific intent to defraud her of her marital interest.  Nekkalapudi responds, however, that the facts in *Skokos* are distinguishable because in this case there was no documentation or evidence, other than Chekuri's testimony, to show where these funds were spent or transferred.  She asserts that, based on this lack of evidence, as well as the proof she presented to show Chekuri's change in spending habits and the substantial increase in his cash withdrawals after the divorce complaint was filed, the circuit court did not err by awarding her one-half of these marital funds.

We agree that the circuit court's award was not clearly erroneous under the facts in this case.  The exhibits introduced by Nekkalapudi demonstrated that Chekuri's cash withdrawals increased from approximately $1,200 per month prior to and during the

---

[2]Although *Skokos*, *supra*, referenced the requirement of fraud, we note that in *Ramsay v. Ramsey*, this court held that the "wrongful disposition" of property by one spouse should have been considered by the circuit court when ordering the division of marital property.  259 Ark. at 23, 531 S.W.2d at 33.

13

marriage to more than $7,100 per month in 2016, after the parties' separation. In addition, the evidence showed that the cash balance in his accounts went from over $9,200 in 2016 to approximately $1,200 by the time of the divorce hearing. While Chekuri attempted to justify these expenditures by pointing to his greatly increased income starting in July 2016 and to the fact that he paid most of his expenses in cash, he had no documentation to support the majority of his expenses, which he alleged amounted to $18,559.40 per month. For example, he claimed $4,000 in monthly research expenses for his doctoral program, but he had no bills, receipts, or any other proof of these expenditures. And as Nekkalapudi argued in her posttrial brief, Chekuri had been pursuing his doctorate for at least ten years, well before he obtained his new position at Mercy Hospital, yet he was clearly not withdrawing these same amounts prior to 2016. The circuit court recognized this at the conclusion of the final hearing, stating, "I would think you would summarize research expense if nothing else for tax purposes." Chekuri also claimed that he was spending approximately $5,500 each month to pay off his debts starting in the spring of 2017. However, according to his affidavits, his total debt increased by $10,000 from October 2016 to June 2017 and had decreased by less than $6,000 in August 2017.

Relying on this proof, Nekkalapudi argued below that Chekuri had converted at least $135,000 in income with the effect of depriving her of her marital interest. Thus, contrary to Chekuri's argument, there was evidence from which the circuit court could have concluded that Chekuri spent these funds with the intent to defraud Nekkalapudi.

14

We defer to the circuit court's superior position in determining the credibility of witnesses and resolving any conflicts in the testimony. *Moore v. Moore, supra.* Chekuri contends that the circuit court failed to make a finding of fraud, but he made no request for specific findings pursuant to Ark. R. Civ. P. 52. In the absence of a showing to the contrary, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its decision. *Curry v. Pope Cnty. Equalization Bd.*, 2011 Ark. 408, 385 S.W.3d 130; *McCracken v. McCracken*, 2009 Ark. App. 758, 358 S.W.3d 474. We therefore affirm the circuit court's award to Nekkalapudi of one-half of the marital funds that Chekuri spent during the parties' separation.

In his second point on appeal, Chekuri contends that the circuit court erred in ordering an equal division of marital assets. He makes this argument with respect to both the award of one-half of the marital funds expended and the award to Nekkalapudi of one-half of his retirement account, which was worth approximately $21,000 at the time of the final hearing.

According to Arkansas Code Annotated section 9-12-315(a), all marital property "shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable." In that event, the court is to make some other division that it deems equitable, taking into consideration the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income; vocational skills; employability; the estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; the contribution

15

of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the division of property. Ark. Code Ann. § 9-12-315(a)(1)(A). When marital property is divided unequally, the circuit court must state its basis and reasons therefore. Ark. Code Ann. § 9-12-315(a)(1)(B).

Chekuri asserts that an unequal distribution in his favor would be equitable because the marital assets at issue were obtained after the parties had separated; the parties were married for a short time and kept their individual property separately; Nekkalapudi did not contribute to the advancement of Chekuri's career; and the alimony and property awards in this case punished him for working hard while rewarding Nekkalapudi for failing to seriously pursue employment or her medical license.

The circuit court in this case clearly considered the factors listed in section 9-12-315 and determined that an equal distribution of marital assets would be equitable even though each party had requested an unequal division. The court repeatedly chastised Nekkalapudi for not working more diligently to obtain her medical license or more lucrative employment but also recognized the great disparity between each party's assets, incomes, and employability. In addition, there was evidence that Nekkalapudi had a larger amount of personal debt. At the conclusion of the hearing, the circuit court stated, "There is the expense and cash situation on one side, and on the other it is very short term even if they lived together consistently. And the employment situation of only working for $500 is questionable. There are equities on both sides." Further, even though it equally divided

the marital property, the circuit court awarded Nekkalapudi only a fraction of the rehabilitative alimony that she requested. We have held that the division of marital property and an award of alimony are complementary devices that a circuit court may employ to make the dissolution of a marriage as equitable as possible. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15. Under these circumstances, we cannot say that the circuit court's decision to equally divide the marital assets was clearly erroneous.

The dissent faults the circuit court for failing to recite the basis for its distribution of property. However, the court is only required to state the basis and reasons for its award where it finds that an unequal distribution of marital property is warranted. Ark. Code Ann. § 9-12-315(a)(1)(B). Here, as discussed above, the circuit court divided all marital property equally between the parties.

*Award of Alimony*

In his third and final point on appeal, Chekuri argues that the circuit court erred by awarding Nekkalapudi rehabilitative alimony. He challenges both the $2,500 per month in temporary alimony that was ordered in January 2017 and the $1,000 per month in rehabilitative alimony for a period of eighteen months that was awarded in the divorce decree.

The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808. We have held that the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other

17

spouse's ability to pay. *Id.* "In addition, the following secondary factors should be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support." *Id.* at 9, 506 S.W.3d at 815.

An award of alimony is within the sound discretion of the circuit court, and we will not reverse that decision absent an abuse of discretion. *Id.* at 15, 506 S.W.3d at 818–19. We have further emphasized that the circuit court is in the best position to view the needs of the parties in connection with an award of alimony. *Id.* at 15, 506 S.W.3d at 818.

Chekuri argues that rehabilitative alimony should not have been awarded at all due to the short nature of their marriage, which he asserts was not long enough to establish a marital standard of living. He asserts that neither the temporary support order nor the support ordered in the decree should have been made and that both should be set aside. He further contends that he should be reimbursed for the support he has already paid.

With regard to Chekuri's challenge to the $2,500 in temporary support that was ordered in January 2017, this issue is not properly before us because he failed to designate

18

the temporary order in his notice of appeal. A notice of appeal shall designate the judgment, decree, order, or part thereof from which the case is appealed. Ark. R. App. P.– Civ. 3(e)(ii) (2019). We have held that orders not mentioned in a notice of appeal are not properly before the appellate court. *Entertainer, Inc. v. Duffy*, 2012 Ark. 202, 407 S.W.3d 514. Furthermore, Chekuri did not make this argument or request reimbursement of temporary support either at the final hearing or in his posttrial brief; thus, it is not preserved for our review of his appeal from the divorce decree. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283.

As to the award of $1,000 in rehabilitative alimony, Chekuri's contention that a marital standard of living was not established between the parties is contrary to his position below. In his posttrial brief, he claimed that his average net monthly income of $5,000 per month "was the standard of living between the parties." Thus, this particular argument is being raised for the first time on appeal and is not preserved. *Ingle*, *supra*.

Chekuri further argues that the circuit court's alimony award should be set aside because the property division ordered in the divorce decree granted Nekkalapudi more than $68,000. He contends that this amount, combined with the temporary support that she received for approximately one year, is sufficient to allow her to be self-supporting.

We cannot say that the circuit court abused its discretion in its award of alimony under the circumstances in this case. Nekkalapudi testified that she was currently earning approximately $500 per month, with monthly expenses of at least $2,600 even if she continued to live with her parents. In comparison, Chekuri's net income exceeded

19

$15,000 a month.  Nekkalapudi also introduced a document detailing the two-year plan that she was following in order to obtain her medical license.  Although Chekuri claimed that this process could be completed in six months, he admitted that it took him five years to obtain his own license.  The circuit court correctly focused on Nekkalapudi's financial need and Chekuri's ability to pay.  In addition, the court recognized Nekkalapudi's delayed efforts to pursue her career throughout the divorce proceedings; the court awarded her only one-quarter of the alimony that she requested, and the award was for a shorter duration of time than she requested.  The circuit court was in the best position to determine the financial needs of each party in this case.  *Foster*, *supra*.  Accordingly, we affirm the alimony award as well.

Affirmed; court of appeals' opinion vacated.

HART and WOOD, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.**  I dissent.  In my view, there is a lack of subject matter jurisdiction in this case, and, if there is subject matter jurisdiction, the circuit court clearly erred in dividing Mr. Chekuri's living expenses as part of the property settlement.

A.    Subject-Matter Jurisdiction.

When a trial court lacks subject-matter jurisdiction, we must dismiss the appeal.  *James v. Williams*, 372 Ark. 82, 270 S.W.3d 855 (2008).  Subject matter jurisdiction is a matter that we are obligated to raise on our own motion.  *Id.*  Before a circuit court of this state acquires subject-matter jurisdiction so as to have the power to grant a divorce, there

20

must first be a valid marriage.

The parties testified that they were married in India. However, no documentation was provided to the circuit court, save for a wedding invitation. Furthermore, neither party provided any description of the ceremony, qualifications or even the identity of the official presiding over the proceedings, or even if the marriage license was recorded. Indeed, all we know about the wedding was that more than $100,000 was spent on it.

There is an additional problem. Testimony in the record establishes that while the ceremony was conducted in India, the marriage was not consummated there, nor could it be said that the parties resided in India at the time. Pursuant to Arkansas Code Annotated section 9-11-107 (Repl. 2015), more information is required. It states:

> (a) All marriages contracted outside this state that would be valid by the laws of the state or country in which the marriages were consummated and in which the parties then actually resided shall be valid in all the courts in this state.

I have scoured the record and found no proof sufficient to satisfy section 9-11-107. Accordingly, I would dismiss this appeal.

### B. Property Division

The circuit court's property division is fatally flawed. First, pursuant to what is commonly referred to as the "separation hearing," Nekkalapudi was given generous temporary support in the amount of $2,500 per month. For this reason alone, the circuit court erred in going back and giving her more of Chekuri's salary as "property." Certainly the equities do not compel such an action. After Chekuri filed for divorce, he improved his financial situation by securing gainful employment. At the same time, Nekkalapudi

failed to even take the steps necessary to secure a medical license in the United States, much less any type of job that would be commensurate with her education.

Further, it is undisputed that Nekkalapudi's contribution to the so—called marriage were minimal at best. It is not sufficient that the circuit court "consider" the factors listed in Arkansas Code Annotated section 9-12-315—judicial discretion requires that the court properly apply those factors. These factors are:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

Given Nekkalapudi's indifference to bettering her situation, *all* of the section 9-12-315 factors dictate that Chekuri not be forced to give Nekkalapudi half of the money he expended for his living expenses.

The majority's contention that findings were not required because the circuit court divided the marital property "equally," is simply not supported by the record. Marital

22

property" is defined by section 9-12-315(b):

> (b) For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of divorce from bed and board;
>
> (4) Property excluded by valid agreement of the parties;
>
> (5) The increase in value of property acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor;
>
> (6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or Social Security claim when those benefits are for any degree of permanent disability or future medical expenses; and
>
> (7) Income from property owned prior to the marriage or from property acquired by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement, or in exchange therefor.

Accordingly, most of the "property" that the circuit court awarded did not qualify as marital property under section 9-12-315. I concede that the circuit court had the authority to award Nekkalapudi half of the existing property, like Chekuri's retirement

23

account. However, the circuit court went well beyond that "equal" division. The circuit court made an unequal distribution of marital property when it awarded Nekkalapudi half of Chekuri's spending on living expenses for rent, utilities, food, gasoline—the necessities that allowed him to earn the income that he did after Nekkalapudi fled the marriage. I cannot ignore that the circuit court made this "property" award after it had already required Chekuri to pay $2500 per month to support Nekkalapudi while she opposed the divorce. If the circuit court had applied the statutory factors listed in section 9-12-315, perhaps it could have seen what was truly fair and equitable.

I respectfully dissent.

**RHONDA K. WOOD, Justice, dissenting.** I agree with Justice Hart's dissenting opinion to the extent that it states that the circuit court erroneously divided the marital property pursuant to Arkansas Code Annotated § 9-12-315(a)(1) because it did not apply the factors provided in the statute. The statute clearly requires the court to "state its basis and reasons for not dividing the marital property equally between the parties." Ark. Code Ann. § 9-12-315(a)(1)(B). The circuit court's failure to recite in the order its basis for the unequal distribution alone requires reversal.

Nevertheless, I write separately to further expound on the majority's second footnote because I believe in *Skokos* this court misrepresented precedent. In *Skokos*, the court explained the *Ramsey* decision by stating, "We reversed and remanded, in part, because the Chancellor had failed to make an award to the wife for personal property that her husband had fraudulently transferred." *Skokos v. Skokos*, 332 Ark. 520, 535, 968

24

S.W.2d 26, 34 (1998) (citing *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975)). This is factually inaccurate. *Ramsey* permitted an award for one spouse's "wrongful disposition" of marital property, not fraud. *Ramsey*, 259 Ark. at 23, 531 S.W.2d at 33. *Skokos* also cites *Pierson v. Barkley* for the same proposition. 253 Ark. 131, 133, 484 S.W.2d 872, 873 (1972). But in *Pierson*, a probate case, the circuit court concluded that a husband's pre-death transfer of property to his children was "voidable." *Id*. Thus, neither *Ramsey* nor *Pierson* required a circuit court to find fraud before awarding funds spent by one spouse.

However, relying on faulty precedent, *Skokos* held that the spouse could not receive a reimbursement for marital funds spent absent proof of intent to defraud. 332 Ark. at 540, 968 S.W.2d at 36. Therefore, citing *Skokos*, this court and the court of appeals have continued to require fraud when *Skokos* improperly interpreted and misstated precedent. It is time we correct this and return to the statutory scheme in property distribution. Therefore, while I do not think that fraud is specifically required, the circuit court was required to "state its basis" for an unequal distribution of the marital property pursuant to Ark. Code Ann. § 9-12-315(a)(1)(B). Without knowing the basis, we cannot review the decision.

*Green & Gillispie*, by: *Chad M. Green*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Kamps & Stotts, PLLC*, by: *Jocelyn A. Stotts*, *Bianca G. Garcia*, and *Victor R. Richardson*, for appellee.