Cite as 2023 Ark. App. 499

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-186

|  |  |
|---|---|
| JOHN JAMES BAKER<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>DENISE BINNS BAKER<br>APPELLEE/CROSS-APPELLANT | **Opinion Delivered** November 1, 2023<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26DR-20-367]<br><br>HONORABLE CECILIA DYER, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL |

**WENDY SCHOLTENS WOOD, Judge**

John Baker and Denise Binns Baker each appeal the decree of divorce entered by the Garland County Circuit Court on September 27, 2021. On direct appeal, John argues that the circuit court erred in (1) finding that real property at 148 East Glazypeau Road was marital property; (2) finding that a five-acre tract adjoining 148 East Glazypeau Road was marital property; and (3) awarding Denise spousal support pending the parties' divorce. Denise cross-appeals, arguing that the circuit court erred in (1) ordering her to repay money she withdrew from John's nonmarital business accounts and (2) denying her request for rehabilitative alimony. We affirm on both direct appeal and cross-appeal.

John and Denise were married on October 15, 2016, and no children were born during the marriage. Denise has a daughter, MC, from a previous marriage. The evidence presented at the divorce hearing showed that when the parties married in 2016, they each brought items of real and

personal property into the marriage. Denise owned a home at 105 Scotch Court in Hot Springs (Scotch Court), where she lived with MC. When the parties married, John moved into Denise's home, and together they made significant improvements to the home. John had been residing at 148 East Glazypeau Road in Hot Springs (East Glazypeau), which is a home and shop where he operated Top That, LLC (Top That), a countertop fabrication business. East Glazypeau was owned by John's parents when the parties married in 2016. However, in 2017, John's parents deeded East Glazypeau to John, and John and Denise executed a mortgage with the power to sell in favor of John's parents to secure a promissory note in the amount of $100,000. Both the deed and the mortgage were filed in January 2018. John and Denise subsequently moved into the home at East Glazypeau and continued to reside there during the marriage. Also, within a year of the marriage, John and Denise purchased five acres of land (the five-acre tract) adjoining East Glazypeau using $20,000 that John's parents provided. The parties subsequently conveyed the five-acre tract to a real-estate holding company, Top That Properties, LLC (Top That Properties), that they jointly formed during the marriage.

Denise testified that she is a registered nurse. During the marriage, however, she worked for Top That helping with installs, payroll, and printing estimates. She did not draw a salary.

In March 2019, Denise discovered John's phone contained images of photographs of her daughter and niece in swimsuits. The photos had been cropped to focus on the girls' breasts and on MC's pubic area. Another photograph on John's phone showed the exposed breast of an unknown female who appeared to be a minor. Denise separated from John in March or April 2019, and John filed a complaint for divorce on July 26, 2019. However, the parties reconciled, and the divorce case was dismissed on January 28, 2020.

On September 16, 2019, while the original divorce complaint was pending, John and Denise executed a revocable trust agreement, "The John and Denise Baker Living Trust" (Trust). They were designated both settlors and co-trustees of the Trust. They placed all the real and personal property that they owned individually and jointly into the trust.

When John failed to complete counseling during the parties' reconciliation, Denise separated from him again, and she filed her complaint for divorce on May 13, 2020. John answered and filed a counterclaim, and a hearing was held on August 4, 2021, at which time the circuit court heard testimony from several witnesses, including both parties, and received multiple exhibits into evidence. After the parties submitted proposed findings of fact and conclusions of law, the circuit court entered a divorce decree.

The court first found that the terms of the Trust were clear and unambiguous, that when the parties placed their property into the Trust they were not commingling it, and that it was their intent that their nonmarital property was not converted into marital property. The circuit court then found that Scotch Court was Denise's nonmarital property and awarded it to her. The court found that East Glazypeau and the five-acre tract were marital property and ordered that the properties be sold at auction with the net proceeds of the sale to be equally divided by the parties. The court found that Top That Properties was marital property that owned no property at the time of the divorce; therefore, the court ordered that it be dissolved, with each party bearing one-half of the cost associated with dissolution. The circuit court found that Top That was John's premarital property and awarded it to him.

The circuit court next found that Denise had wrongfully taken $19,000 from two bank accounts belonging to Top That. It ordered her to return the money, but it offset the amount by

3

$14,000, which was the amount the court awarded Denise for spousal support during the fourteen-month divorce action. Finally, the court denied Denise's request for seven years of rehabilitative alimony. This appeal followed.

This court reviews divorce cases de novo, but it will not reverse the circuit court's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. *Branscum v. Branscum*, 2022 Ark. App. 126, at 2, 642 S.W.3d 270, 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*, 642 S.W.3d at 273. In reviewing the circuit court's findings, this court defers to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony and the evidence. *Jez v. Jez*, 2016 Ark. App. 594, at 2, 509 S.W.3d 1, 3.

Decisions about alimony and spousal support are matters within the circuit court's discretion, and this court will not reverse such decisions absent an abuse of that discretion. *Middleton v. Middleton*, 2020 Ark. App. 389, at 11, 609 S.W.3d 652, 660. An abuse of discretion occurs when a circuit court acts improvidently, thoughtlessly, or without due consideration. *Townsend v. Townsend*, 2021 Ark. App. 87, at 13. The circuit court is in the best position to determine the needs of the parties concerning an award of alimony. *Id.* In reviewing its decision, our role is simply to determine whether the circuit court abused its discretion; we do not substitute our judgment for that of the circuit court. *Medlen v. Medlen*, 2020 Ark. App. 159, at 8–9.

On direct appeal, John presents three points. The first point is that the circuit court clearly erred in finding that East Glazypeau is marital property. He contends that the property is excluded from the definition of marital property because it was a gift from his parents. John points to the fact

that he is the only person listed as a grantee on the deed from his parents, the conveyance was made among family members, and no consideration was paid for the property.

Arkansas Code Annotated section 9-12-315(b) (Repl. 2015) defines marital property as all property acquired by either spouse subsequent to the marriage. However, section 9-12-315(b)(1) excludes from the definition of marital property "property acquired . . . by gift." The burden of proving that property is in fact separate property acquired by gift is on the party asserting that interest. *Jez*, 2016 Ark. App. 594, at 3, 509 S.W.3d at 3. Thus, John bore the burden of proving that East Glazypeau was a gift.

We hold that the circuit court did not clearly err in finding that John failed to prove that East Glazypeau was a gift to him from his parents. It is undisputed that the property was acquired subsequent to the parties' marriage. It is also undisputed that John and Denise executed a mortgage on East Glazypeau in favor of John's parents in the amount of $100,000. John asserts that no consideration was given for East Glazypeau; however, evidence presented at the hearing showed that Denise and John paid the mortgage with marital funds until February 2020 and that the mortgage was reduced to $70,000. *Davis v. Jackson*, 232 Ark. 953, 957, 341 S.W.2d 762, 764 (1961) (holding that the giving of consideration supports the finding that the transfer was not a gift). Moreover, the legal steps the parties took to sign and execute the deed and mortgage, and then record them, provide additional support for the circuit court's finding that the conveyance was not a gift.

The court found that the only evidence that East Glazypeau was a gift to John was his own testimony, which the court found lacked credibility. The court also noted that John's parents did not appear at the hearing to testify on his behalf about their intent to "gift" the property to him. We defer to the superior position of the circuit court to determine the credibility of witnesses and the weight

to be accorded their testimony. *Jez*, 2016 Ark. App. 594, at 2, 509 S.W.3d at 3. The burden is on the party who asserts an interest in property to establish that it is separate property not subject to division. *Aldridge v. Aldridge*, 28 Ark. App. 175, 177, 773 S.W.2d 103, 104 (1980). We hold that the circuit court did not clearly err in finding that John failed to carry his burden. Accordingly, we affirm the circuit court's finding that East Glazypeau is marital property.

John's second point on appeal is that the circuit court clearly erred in finding that the five-acre tract is marital property. He argues that the tract is excluded from the definition of marital property under section 9-12-315(b)(2) because it was acquired with money that John's parents gave to him. As with East Glazypeau, John bore the burden of showing that the five-acre tract was gifted to him. *Jez*, 2016 Ark. App. 594, at 3, 509 S.W.3d at 3.

It is undisputed that the parties purchased the five-acre tract during the marriage with $20,000 that was provided by John's parents. However, the evidence reflects that the $20,000 was deposited in the parties' joint personal checking account, and a cashier's check in that amount was drawn on the account to pay for the five-acre tract. The circuit court found that the only evidence that the $20,000 was a gift to John was his own testimony, and the court found that his testimony was not credible. The court again noted that there was no corroborating evidence or testimony that his parents intended the money to be a gift and that John's parents did not testify. We note that John conceded at the hearing that he testified in his deposition that he and Denise purchased the five-acre tract from his parents and that the tract was marital property. He also conceded at the hearing that the five-acre tract is marital property and that the parties should split it. On this evidence, and in light of our deference to the circuit court's determinations about credibility and the weight of the

6

evidence, *Fletcher v. Fletcher*, 2015 Ark. App. 105, at 4, 456 S.W.3d 378, 382, we hold that the circuit court did not clearly err in finding that the five-acre tract is marital property.

For his third and final point on appeal, John argues that the circuit court abused its discretion in awarding Denise $14,000 in spousal support ($1,000 a month during the parties' fourteen-month divorce action). John argues that the circuit court awarded spousal support without explanation. And he also asserts that the spousal-support award is inconsistent with the court's decision to deny Denise's request for an award of rehabilitative alimony. He contends that the same reasoning the court applied in denying alimony warrants reversal of the spousal-support award.

John's argument is intertwined with one of Denise's points on cross-appeal: that the circuit court abused its discretion in denying her request for rehabilitative alimony. She contends that the evidence shows that her expenses exceed her income each month by nearly $1,200; John has the ability to pay alimony because his monthly income is $7,600–$7,700; she received her home in the divorce, which is subject to a mortgage, while John received his business; and she has uncertainties surrounding the schooling of MC, which means she may not be able to enter the work force at full duty. She acknowledges that the marriage was "not lengthy" but argues that but for John's "pedophilia" and "lies," the marriage would not have ended.

Alimony is not awarded as a reward to the receiving spouse or as punishment of the spouse against whom it is charged. *Drummond v. Drummond*, 267 Ark. 449, 453, 590 S.W.2d 658, 661 (1979). The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Chekuri v. Nekkalapudi*, 2020 Ark. 74, at 16, 593 S.W.3d 467, 477. We have held that the primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* at 16–

17, 593 S.W.3d at 477. In addition, the following secondary factors should be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both parties; (11) the duration of the marriage; and (12) the amount of child support. *Id.* at 17, 593 S.W.3d at 477.

The circuit court found that Denise was entitled to temporary alimony during the pendency of the divorce but that she was not entitled to rehabilitative alimony postdivorce. Arkansas Code Annotated section 9-12-309(a)(1)(A)(1) (Repl. 2020) allows for maintenance during the pendency of a divorce action. Alimony may be awarded under proper circumstances concerning rehabilitation to either party in fixed installments for a specified period so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code. Ark. Code Ann. § 9-12-312(b)(1) (Repl. 2020). Rehabilitative alimony has been defined as "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support." *Bolan v. Bolan*, 32 Ark. App. 65, 67 n.1, 796 S.W.2d 358, 360 n.1 (1990). Arkansas appellate courts have analyzed the concept of rehabilitative alimony utilizing the same factors that are applicable to permanent alimony.

Contrary to John's argument, it is clear from the record that the circuit court considered the applicable factors along with the parties' differing circumstances (during the divorce action and

8

postdivorce) when it awarded Denise spousal support and denied her rehabilitative alimony. In finding that Denise was entitled to support during the fourteen-month divorce action, the court considered Denise's testimony that she needed funds for support during that period because she was not working for Top That and because John had stopped financially supporting Denise. Her affidavit of financial means reflects that her monthly expenses exceed her income. The court also noted that Denise's motivation for removing funds from the Top That accounts was because she needed money for support during the divorce.

In considering Denise's request for seven years of rehabilitative alimony, the circuit court considered her need; John's ability to pay; their financial circumstances, including their income, resources, assets, and earning capacities; her education and employability; the distribution of marital property; and the length of the marriage. And the court concluded that Denise was not entitled to rehabilitative alimony because she is highly employable as a registered nurse, has a high likelihood of securing a full-time position at a competitive salary, and her decision to remain at home and not work full time was a choice, rather than a necessity. The court discounted Denise's testimony that she has "homeschooled" MC, who has a learning disability, since the pandemic because Denise admitted that MC was enrolled in her school district as a virtual student, and the curriculum was being provided by the school system. Denise also testified that before the pandemic, MC had attended public school, and the court found that Denise's testimony that she needed to spend eight hours each day helping MC with schoolwork was not credible. Finally, the court found that John had no legal obligation to support Denise's daughter directly or indirectly.

Considering *all* the court's findings regarding alimony, we cannot say that the circuit court abused its discretion in awarding Denise spousal support and denying her rehabilitative alimony. In

9

light of the evidence in this case, these two findings are not inconsistent as contended by John. And we reject Denise's arguments, which are requests for this court to reweigh the evidence in her favor. This court defers to the superior position of the circuit court to judge the credibility of witnesses and to weigh the evidence and testimony; it does not substitute its judgment for that of the circuit court. *Carr v. Carr*, 2019 Ark. App. 513, at 12, 588 S.W.3d 821, 828. Furthermore, a circuit court is in the best position to view the needs of the parties in connection with an award of support. *Webb v. Webb*, 2014 Ark. App. 697, at 3, 450 S.W.3d 265, 269. We affirm John's third point on direct appeal and affirm Denise's first point on cross-appeal.

Denise's second point on cross-appeal is that the circuit court clearly erred in ordering her to repay the $19,000 that she withdrew from the two Top That bank accounts. Denise argues that her name was on the signature cards of all the parties' accounts and asserts that she withdrew approximately half of the balance from each Top That account, which she contends is her marital property under Arkansas Code Annotated section 9-12-315 because the parties used their bank accounts throughout the marriage to pay marital expenses and that she deposited MC's disability benefits and child-support payments into the parties' accounts.

Denise does not dispute the circuit court's finding that Top That is John's nonmarital property. She argues that the circuit court erred by finding that she had no authority to withdraw funds from an account on which she was an authorized signer. The fact that Denise was an authorized signatory on a bank account belonging to Top That, however, did not give her the authority to remove funds for her own personal use. *See Bush v. Bush Mach. & Tractor, Inc.*, 2023 Ark. App. 291, at 7, 669 S.W.3d 238, 242–243 (stating the fact that wife's "name was on the Bush Machine [corporate bank] account as a signatory did not give her the authority to remove funds for her own

personal use[ ]" the day before she filed for divorce). Moreover, although Denise argues that she contributed all the money that she received on her daughter's behalf and her small retirement check to "family bank accounts" during the marriage, she points to no specific testimony or evidence that shows she put any money into the Top That business accounts. According to Denise's testimony, she deposited her daughter's disability funds into one of the parties' accounts at Simmons Bank. However, the record reflects that the Top That accounts from which Denise removed the $19,000 were at U.S. Bank and Chambers Bank.

Therefore, on our de novo review, we hold that the circuit court did not clearly err in finding that Denise was not entitled to the funds from the two Top That accounts and in ordering her to repay it. Accordingly, we hold that the circuit court did not clearly err in ordering Denise to repay the $19,000 she removed from the two Top That accounts, less the $14,000 offset, for a total of $5000.

For the reasons stated herein, we affirm.

Affirmed on direct appeal and on cross-appeal.

MURPHY and BROWN, JJ., agree.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Schnipper, Britton & Stobaugh*, by: *John S. Stobaugh*, for appellant.

*Ogles Law Firm P.A.*, by: *John Ogles*, for appellee.