Cite as 2021 Ark. 75

# SUPREME COURT OF ARKANSAS
No. CV-19-625

| | |
|---|---|
| | **Opinion Delivered:** April 15, 2021 |
| CHARLES SYMANIETZ | APPEAL FROM THE BENTON |
| APPELLANT | COUNTY CIRCUIT COURT [NO. 04DR-18-129] |
| V. | HONORABLE DOUG SCHRANTZ, JUDGE |
| DEBORAH SYMANIETZ | AFFIRMED IN PART; DISMISSED IN |
| APPELLEE | PART; COURT OF APPEALS' OPINION VACATED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Charles Symanietz ("Charles") appeals from the Benton County Circuit Court's divorce decree and orders of contempt. For reversal, he argues that the circuit court erred in (1) calculating his child-support obligation and imputing income to him, (2) awarding alimony to appellee Deborah Symanietz ("Debbie"), (3) failing to consider a mediation agreement, and (4) holding him in contempt. We affirm in part and dismiss in part.

## I. *Facts*

Charles and Debbie were married in February 1991. In 2009, they started a trucking company, Symanietz Enterprises. Charles drove the truck while Debbie was the dispatcher, paid the bills and taxes, and kept the company's records. Charles and Debbie separated in September 2017, and Debbie filed for divorce on January 25, 2018. They have three

daughters who were ages eighteen, sixteen, and eleven at the time of the filing. Debbie sought custody of the minor children as well as child support.

On January 25, 2018, the circuit court entered a temporary ex parte order awarding temporary custody of the minor children to Debbie and ordering Charles to "pay child support of $199.00 per week, based on his income." The circuit court also ordered the parties to appear at a hearing on February 7, 2018, but the record reflects that a hearing was not held until July 2018.

On June 30, Debbie filed a motion for contempt alleging that Charles had failed to pay child support as previously ordered. Charles responded that he had never received service of the temporary ex parte order and that he had made child-support payments to the extent that he was able.

Following a November 2018 hearing, the circuit court entered a divorce decree on January 22, 2019. It found that Charles owed $3,500 in unpaid child support and found him in contempt of court for his failure to pay. The court further found that it was not bound by a mediation agreement pursuant to which the parties alleged that they had divided their real property. It ordered that the marital real property and several items of personal property be sold at public auction and the proceeds split evenly after the payment of several debts listed in the circuit court's order.

The circuit court awarded Debbie custody of the two minor children and found that

12. Based on the IRS records and the work records introduced in evidence, the Court imputes $3,400.00 per month in income to Mr. Symanietz. Based upon that amount of income, it is hereby Ordered that Mr. Symanietz pay child support unto Mrs.

Symanietz at $800.00 per month, beginning November 8, 2018 . He shall also pay an additional 20% of that amount ($160.00) per month until his arrearage of $3,500.00 is paid in full.

. . . .

14. The Court orders that, beginning November 8, 2018, Mr. Symanietz shall pay $100.00 per month in alimony to Mrs. Symanietz, so long as she is receiving $2,000.00 per month or more in income from Symanietz Enterprises. However, if she does not voluntarily terminate her employment but ceases receiving that amount of income from Symanietz Enterprises, then Mr. Symanietz's alimony obligation shall increase to $2,000.00 per month, for a period of two years.

15. Mr. Symanietz shall also pay an additional $2,500.00 in fees to Mrs. Symanietz, within 90 days of November 8, 2018.

On February 13, 2019, Charles filed a notice of appeal from that divorce decree. Debbie then filed a motion for contempt and to modify spousal support. She alleged that Charles had failed to make payments toward the arrearage and failed to pay court-ordered child support, fees, and alimony. She further argued that alimony should be modified because of a change in circumstances since Charles refused to work and had "intentionally destroyed Symanietz Enterprises' viability." She also sought a greater share of their real and personal property.

On May 29, Charles was held in criminal contempt of court and sentenced to ten days in the Benton County jail. Then, in a June 5, 2019 order, the circuit court found Charles in willful contempt of the court's orders in the divorce decree. The circuit court ordered that Charles be incarcerated for fourteen days, to run consecutively to the previous ten-day sentence, for a total sentence of twenty-four days in the Benton County jail. The circuit court entered a judgment against Charles for $15,000 in unpaid spousal support and

attorney's fees and found that Charles "may purge himself of the 14-day sentence for Contempt by paying this amount to the Plaintiff."

Charles appealed the divorce decree and contempt orders to the court of appeals, and that court affirmed. *Symanietz v. Symanietz*, 2020 Ark. App. 394, at 1, 609 S.W.3d 643, 645 (substituted opinion on grant of rehearing). Charles then filed a petition for review with this court, which we granted. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *Davis Nursing Ass'n v. Neal*, 2019 Ark. 91, at 4, 570 S.W.3d 457, 460.

II. *Points on Appeal*

A. Child Support

Charles first argues that the circuit court erred in calculating his imputed income as $3,400 per month and setting his child-support obligation at $800 per month because it disregarded the child-support-chart amount, disregarded his tax records, and imputed income even though he claims that his income was not reduced "as a matter of choice."

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.*, 205 S.W.3d at 770. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and that court's findings will not be reversed absent an abuse

4

of discretion. *Taylor v. Taylor*, 369 Ark. 31, 39, 250 S.W.3d 232, 238 (2007). However, a circuit court's conclusions of law are given no deference on appeal. *Id.*, 250 S.W.3d at 238–39.

1. *Whether the circuit court followed Administrative Order No. 10 in calculating child support*

Charles argues that the circuit court failed to follow the established procedure for calculating child support. Specifically, he asserts that the circuit court should have begun its inquiry with the two previous years' tax returns. He relies on his 2016 tax return showing his share of the business income was $34,166, or approximately $2,847.17 per month, and his 2017 return showing his share of the income was $32,746, or approximately $2,728.83 per month. He further argues that the circuit court should have made written findings about why the child-support-chart amount was unjust.

Under Arkansas Code Annotated section 9-12-312(a)(3)(A) (Supp. 2019), in determining a reasonable amount of child support, the circuit court shall refer to the family-support chart in Administrative Order No. 10. Administrative Order No. 10(III)(c) (2019) provides that, "[f]or self-employed payors, support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. . . . Also, the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc." Under Administrative Order No. 10(III)(d),

> [i]f a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to

his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

Ark. Sup. Ct. Admin. Order No. 10(III)(d) (2019). This court has stated that "[a] supporting spouse does not have total discretion in making decisions which affect the welfare of the family, if the minor children have to suffer at the expense of those decisions." *Grady v. Grady*, 295 Ark. 94, 98, 747 S.W.2d 77, 79 (1988). In *Grady*, we recognized that there are situations in which an income reduction is reasonable and justifiable under particular circumstances. *Id.*, 747 S.W.2d at 79. "But the court must judge the facts and circumstances of each case and when under appropriate circumstances an income based on earning capacity is attributed to a spouse, the reviewing court will not find error." *Id.*, 747 S.W.2d at 79.

Here, on imputed income and child support, the circuit court made the following findings in its bench ruling at the November 2018 divorce hearing:

> Based on the evidence that I've seen here, this was a struggle to make ends meet, largely because Mr. Symanietz chose not to drive from time to time. . . . But it has been obvious that Mr. Symanietz works at this business when he chooses to, and when the trouble came, for whatever reason, between these two, he chose not to do so . . . regularly.

> I based child support in the temporary hearing . . . upon representations made to the Court at the time about income and so forth; and, frankly, I found those, as I reviewed this today, to be certainly within reason of what Mr. Symanietz is capable of earning.

> . . . .

> I am convinced, based on the IRS records and the work records that have been provided in the course today, that Mr. Symanietz is very capable of earning a minimum of $3400 a month if he applies himself at this trucking business, and I impute that income to him and set child support at $800 per month.

In the divorce decree, the circuit court again outlined Charles's imputed income and child-support obligation and based those numbers "on the IRS records and the work records introduced in evidence."

We see no error in the circuit court's findings on child support and imputed income. Administrative Order No. 10 required the circuit court to consider Charles's tax returns from the previous two years, but it also mandated that the circuit court consider the amount he is capable of earning and, if he was "unemployed or working below full earning capacity . . . the reasons therefor." In addition to the income reflected for 2016 and 2017, Charles's tax returns also showed that in 2014 and 2015, his share of the income was much greater than in 2016 and 2017. Further, Debbie testified—and provided work records in support—that for the three-month period from March 1 to May 26, 2017, Charles earned approximately $33,306. His share of that amount would have been $16,653 for the entire period, or approximately $5,551 per month.

The circuit court considered the parties' testimony, tax returns, and work records and concluded that Charles was intentionally earning less than he was capable of earning, which was a matter within the circuit court's discretion. Giving deference to the circuit court's superior position to determine witness credibility, we hold that the circuit court did not abuse its discretion in imputing $3,400 per month to Charles and setting his child-support obligation at $800 per month.

2. *Whether Charles's income was reduced as a matter of choice*

Charles also argues that income should not have been imputed to him at all because his income was not reduced "as a matter of choice" but because "the undisputed evidence was that Debbie (his dispatcher) quit working and the business did not have the money to fix the truck."

Under Administrative Order No. 10, "[i]f earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style." Ark. Sup. Ct. Admin. Order No. 10(III)(d).

Contrary to Charles's assertion that "Debbie, the other half of the business, stopped working in the face of divorce proceedings," Debbie testified that she had continued working for their business during the divorce proceedings and was willing to do so after the divorce was final. She testified that she communicated with Charles primarily through email and text messages. After she filed for divorce, it became more frequent that Debbie would present Charles with truck runs, but he would not accept if he did not want to do them. Sometimes, he would find his own runs, which often produced less income than the runs Debbie had located for him. Debbie and Charles both testified that he had taken runs following the July 2018 temporary hearing, even though he had testified at that hearing that he could not drive the truck without performing repairs.

The circuit court ruled that the parties' testimony amounted to "a great deal of he-said/she-said." It found that the struggle to make ends meet was largely due to Charles's decision not to drive from time to time, but that he was "very capable of earning a minimum

of $3400 a month if he applies himself at this trucking business." We defer to the circuit court's assessment of witness credibility. *See Ward*, 361 Ark. at 158, 205 S.W.3d at 770. We cannot say that the circuit court's decision to impute income to Charles was an abuse of discretion.

## B. Alimony

Charles next argues that the circuit court's grant of alimony was an abuse of discretion because the parties had precisely equal earnings and Debbie chose not to work. Charles further challenges the award because "it amounts to all of [his] income."

An award of alimony is within the sound discretion of the circuit court, and we will not reverse that decision absent an abuse of discretion. *Chekuri v. Nekkalapudi*, 2020 Ark. 74, at 17, 593 S.W.3d 467, 477. We have further emphasized that the circuit court is in the best position to view the needs of the parties in connection with an award of alimony. *Id.*, 593 S.W.3d at 477.

The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Foster v. Foster*, 2016 Ark. 456, at 9, 506 S.W.3d 808, 814. The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.*, 506 S.W.3d at 815. The following secondary factors should also be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the

9

amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support. *Id.*, 506 S.W.3d at 815. This court has held that the amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *Kuchmas v. Kuchmas*, 368 Ark. 43, 46, 243 S.W.3d 270, 272 (2006).

On alimony, the circuit court ordered the following:

The Court orders that, beginning November 8, 2018, Mr. Symanietz shall pay $100.00 per month in alimony to Mrs. Symanietz, so long as she is receiving $2,000.00 per month or more in income from Symanietz Enterprises. However, if she does not voluntarily terminate her employment but ceases receiving that amount of income from Symanietz Enterprises, then Mr. Symanietz's alimony obligation shall increase to $2,000.00 per month, for a period of two years.

The circuit court rationalized in its bench ruling:

[I]n light of the earning capacity that the Court perceives for Mr. Symanietz, it's much greater than the potential for Ms. Symanietz. I don't see her having the ability to go out and drive [a] truck or to broker or to dispatch anywhere near and earn anywhere near the money that Mr. Symanietz is capable of. So for that reason, even though their education and other factors may be similar, the earning capacity is just not the same. Plus she now has the burden of caring for a disabled adult daughter, which also is taken into account as the Court makes its decision.

We agree with the circuit court's alimony award because it considered the parties' earning capacities, Debbie's financial need, and Charles's ability to pay. Although Charles

claims that Debbie refused to work, she testified at the divorce hearing that she continued to find truck runs for Charles during the divorce proceedings although he often declined them. She also testified that she was willing to continue working for Symanietz Enterprises. But Charles testified, "It's a constant friction fight. I cannot work with her[,]" and "We do not get along. . . . I do not wish to work with Debbie."

The circuit court also heard testimony on the parties' work experience. Charles testified that, in addition to more than 1 million miles of trucking experience, he has fifteen years of experience in the flooring business, had built several homes, had worked in sales, and considers himself "a jack of all trades." Debbie testified that, apart from her previously mentioned tasks at Symanietz Enterprises, she had attempted brokering and had worked as a waitress for about a year before they started the trucking business. Debbie further testified that, in addition to providing for her two minor daughters who live with her, she also cares for her adult daughter who lives with her and suffers from a serious medical condition.

After hearing this testimony, the circuit court determined that Charles had a much greater earning potential than Debbie, and it also considered Debbie's financial obligations in caring for her adult daughter. We defer to the circuit court's credibility determinations and superior position to view the parties' needs with respect to alimony. *See Chekuri*, 2020 Ark. 74, at 17, 593 S.W.3d at 477. Thus, we hold that the alimony award was not an abuse of discretion, and we affirm the circuit court's ruling.

C. Mediation Agreement

11

Charles next challenges the circuit court's finding within the divorce decree that the parties' real estate be sold at public sale to the highest bidder. He argues that the parties had a mediation agreement to sell it privately for no less than $200,000, and the circuit court's refusal to consider that agreement constitutes reversible error.

In domestic-relations cases, our review is de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Potts v. Potts*, 2017 Ark. 33, at 9, 512 S.W.3d 611, 616.

Here, the circuit court found that "[t]he agreement was not entered into evidence and did not deal with the debt and personal property. Therefore[,] the Court cannot find the agreement is reasonable, and the Court is not bound by that agreement." Given that the mediation agreement was not entered into evidence and is not part of the record on appeal, we hold that the circuit court's finding that it was not bound by the agreement was not clearly erroneous.

## D. Contempt

For his last point on appeal, Charles seeks a reversal of the contempt orders entered against him on January 22, May 29, and June 5, 2019. He argues that he did not "willfully" fail to pay child support before April 4, 2018, because he was unaware of the child-support order until that date. He also argues that he should not have been held in contempt because he is incapable of paying the court-ordered amounts of child support and alimony.

12

As a preliminary matter, Charles acknowledges on appeal that "[c]ounsel miscalculated the deadline[,]" and filed his amended notice of appeal from the May and June 2019 contempt orders several days late. The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Craig v. Carrigo*, 353 Ark. 761, 777, 121 S.W.3d 154, 164 (2003). Because Charles failed to timely file a notice of appeal from the May 29 and June 5, 2019 orders, we lack jurisdiction to review them and dismiss those portions of the appeal.

We now turn to the January 22 contempt order. This court has said that willful disobedience of a valid order of a court is contemptuous behavior. *Ivy v. Keith*, 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002). However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Scudder v. Ramsey*, 2013 Ark. 115, at 12, 426 S.W.3d 427, 435. Contempt can be civil or criminal. *Id.*, 426 S.W.3d at 435. The purpose of criminal contempt is to preserve power, vindicate the dignity of the court, and punish for disobedience of the court's order. *Id.*, 426 S.W.3d at 435. By comparison, civil-contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Id.*, 426 S.W.3d at 435. Because the January 2019 contempt finding was civil, the standard of review is whether the circuit court's finding is clearly against the preponderance of the evidence. *Id.* at 13, 426 S.W.3d at 435.

In the January 22, 2019 divorce decree, the circuit court found that Charles owed $3,500 in unpaid child support dating back to its January 2018 temporary order. It held Charles in contempt of court for his failure to pay. We agree. Charles's argument that he

13

should not have been held in contempt because he could not afford to pay the court-ordered amount is an extension of his argument against the child-support award. Because we affirm the award of child support, we hold that the circuit court's contempt finding for failure to pay it is not clearly against the preponderance of the evidence. Additionally, the circuit court did not specifically rule on Charles's lack-of-notice argument in its order. Thus, he has failed to preserve that argument for appeal. *See TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 9, 427 S.W.3d 651, 657. We affirm the circuit court's January 22, 2019 contempt order.

Affirmed in part; dismissed in part; court of appeals' opinion vacated.

WEBB, J., dissents.

**BARBARA W. WEBB, Justice, dissenting.** I respectfully dissent from the majority's decision to affirm the alimony award.

The circuit court imputed income to Charles of $3400 a month "if he applies himself at this trucking business." The trucking business had been run exclusively by both Deborah and Charles throughout their marriage. The imputed income was based on figures from years prior to the divorce when Charles was younger, and the parties were working together as partners with a common goal. The circuit court assumed the parties would continue working together with the same fervor after the divorce. This alone was an abuse of discretion. Past average income, unless it reflects current reality, is simply meaningless in determining a present ability to pay. *Jones v. Jones*, 295 So. 3d 1226, 1228 (Fla. Dist. Ct. App. 2020) (citations omitted). Past average income will not put bread on the table today. *Id.*

The record reflects that Deborah managed all the affairs for the business except drive the truck. She found the best runs, negotiated the freight fees, facilitated the payment arrangements, and communicated with the freight companies. The business' success was largely dependent on Deborah's skills. Yet, she was guaranteed the alimony award despite how much she continued to contribute to the business for as long as she did not resign from the company. Furthermore, the record reflects that the only truck the company owned was in such disrepair that it was not legal to be on the road. Charles, who was living in a trailer with no electricity or running water, testified that he could not afford to pay for the repairs to the truck. The circuit court put Charles in a position in which he could not succeed. His business partner is his ex-wife with whom he was bitterly fighting, he was court ordered to make payments which left him with a maximum of $600 a month and had no operable truck with which to earn the money to make his ordered support payments.

As the MMA fighter Max Holloway said, "Numbers don't lie. women lie, men lie, but numbers don't lie." In reviewing the numbers, of the $3400 in monthly imputed income to Charles, $800 went to child support and $2,000 went to alimony. That leaves Charles with $600 at the end of the month for a total of $7200 in annual income—a figure well below the poverty level.[1] However, Deborah is guaranteed $33,600 per year, which is well above the poverty line.

---

[1] www.healthcare.gov

15

In marital dissolution proceedings, the circuit court need not equalize the financial position of parties. *Canakaris v. Canakaris*, 382 So. 2d 1197, 1204 (Fla. 1980) (citing *Brown v. Brown*, 300 So. 2d 719 (Fla. 1st DCA 1974)). However, the circuit court must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing totality of circumstances, one spouse should not be "shortchanged." *Id.* Here, the circuit court created a vast financial disparity that left Charles hopelessly destitute while creating considerable financial security for Deborah. This is a clear abuse of discretion, and for these reasons, I dissent.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya* and *Sonia A. Kezhaya*, for appellant.

One brief only.