Cite as 2022 Ark. 52

# SUPREME COURT OF ARKANSAS
No. CV-21-141

| | | |
|---|---|---|
| JERMEY A. PARNELL | | Opinion Delivered: March 3, 2022 |
| | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT [NO. 47BDR-05-312] |
| V. | | |
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION, OFFICE OF CHILD SUPPORT ENFORCEMENT | | HONORABLE RALPH WILSON, JR., JUDGE |
| | | <u>REVERSED AND REMANDED</u> |
| | APPELLEE | |

**BARBARA W. WEBB, Justice**

Jermey Parnell appeals from a child-support order that set his support obligation above the amount indicated by the latest version of Arkansas Supreme Court Administrative Order No. 10--Child Support Guidelines (2020). Although this case was originally filed in the court of appeals, we accepted certification because it requires construction of new provisions in the guidelines setting support when a child's parents earn more than $30,000 per month. On appeal, Parnell argues that the circuit court erred in its calculation of his child-support obligation. We agree. We therefore reverse and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. *Facts*

On July 12, 2004, Ebonique Butler gave birth to a son, EPB, who was fathered by Parnell when he was seventeen years old. Parnell ultimately went on to become a very successful professional football player. The most recent support order was entered while he was an active player and recited that Parnell's monthly net income was $306,080. Under the previous version of the guidelines, Parnell's presumed monthly child-support obligation was more than $45,000. However, Butler claimed to have monthly expenses of only $4461. The circuit court found that the presumptive child-support obligation was unjustified, and instead it ordered Parnell to pay $7500 per month.

In January 2019, Parnell retired from the National Football League. He subsequently filed for change of custody when EPB was sixteen years old. He also filed for a reduction in child support. The issues were bifurcated. The change of custody was denied, and it is not a subject of this appeal. As indicated previously, all that is before us is the proper amount of child support that Parnell is obligated to pay under the current guidelines and the family support chart.

Parnell used a substantial portion of his earnings as a professional football player to invest in real estate. The circuit court found that Parnell's monthly gross income was $36,849. That figure is not disputed on appeal. The current guidelines, however, only make provisions for monthly incomes up to $30,000. Moreover, unlike the previous versions of the guidelines, the income of both parents is considered when establishing a child-support

obligation. The circuit court made the following pertinent findings to justify the order that is currently before us.

> I have examined OCSE's two submitted Worksheets and their respective calculations. I am adopting Worksheet #1 reflecting combined gross monthly income of $38,582.60, and the Payor's share at $1,864.31 for child support. The Payor's monthly income exceeds the Monthly Family Support Chart by $6,849. The court is now required to use its discretion in determining the additional support owed by a payor. There is precedent for using the former Guidelines and Chart. In doing so, in exercising my discretion, I am adding 15% of the excess monthly income, or $1027.35, now totaling $2,891.35 per month as the child support obligation. This is now the rebuttable presumptive child support obligation by Mr. Parnell.

The circuit court further deviated from the presumptive support amount. Its conclusion was

> based on Ms. Butler's needs, the age of [EPB], at 16, the fact that Mr. Parnell has apparently set aside funds to pay child support for his son through his 18th birthday, and the upward deviation is in [EPB'S] best interest under these unique facts and circumstances.

The court concluded that $6500 was an appropriate monthly support obligation. Parnell now challenges these findings as the basis for the circuit court's calculation of his child-support obligation.

## II. *Standard of Review*

We review an appeal from a child-support order de novo on the record. *Symanietz v. Symanietz*, 2021 Ark. 75, 620 S.W.3d 518. However, we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and that court's findings will not be reversed absent an abuse of discretion. *Id.* However, a circuit court's conclusions of law are given no deference on appeal.

3

Parnell argues that the circuit court erred by ordering support that exceeded the highest chart amount. He asserts that Butler's needs are not synonymous with the needs of EPB, which are presumptively covered by the chart. Further, he asserts that the circuit court's finding that EPB's age of sixteen supported deviation is unsupported by the record. From 2017 to 2020, Butler's stated expenses have increased by only $436. Accordingly, the circuit court's finding that EPB, at sixteen years of age, requires more support is clearly erroneous. Finally, Parnell argues that the circuit court improperly considered funds that he has set aside to pay child support for EPB through his eighteenth birthday. Parnell contends that the fact that he complies with court orders and budgets for his present and future expenses has absolutely nothing to do with the "reasonable needs" of EPB and is not contemplated as a reason for an upward deviation in his child-support obligation under Arkansas Code Annotated section 9-12-312 (Repl. 2020) and section 9-14-107 (Supp 2021) or the current version of Administrative Order No. 10.

Regarding the deviation criteria in Administrative Order No. 10, Parnell notes that there is no evidence that EPB has any extraordinary medical or educational needs. Parnell asserts that pursuant to the 2017 order, he pays for EPB's health, dental, and vision insurance and 100 percent of all copays and unreimbursed medical expenses. Regarding education expenses, EPB attends public school in Craighead County. Furthermore, he pays 100 percent of all transportation expenses associated with EPB's visiting him in Texas, and he has established an irrevocable trust with $17,474.64, which is certainly "significant

available income of the child." Accordingly, Parnell argues that because the circuit court relied on improper considerations in setting his child-support obligation, the circuit court abused its discretion and this case should be reversed and remanded. We agree.

IV. *Legal Basis for Calculating Support*

Arkansas Code Annotated section 9-12-312(a)(4)(A)(i) mandates that a committee appointed by the Chief Justice of the Arkansas Supreme Court review the Arkansas Family Support Chart every four years. This court promulgated a revised order concerning child-support obligations in 2020. *In re Implementation of Revised Admin. Ord. No. 10*, 2020 Ark. 131 (per curiam). In accordance with Act 907 of 2019, the new family support chart is based on the "Income Shares Model," which provides "that children should receive the same proportion of parental income that they would have received had the parents lived together and shared financial resources." *Id.* at 2. The new order provides that "each parent's share is that parent's prorated share of the two parents' combined income." *Id.* "[T]he pro-rata charted amount establishes the base level of child support" the payor parent must pay the payee parent. *Id.* at 3. And a "rebuttable presumption" exists that this chart-derived amount "is the amount to be awarded." *Id.*

The following sets out the relevant procedure:

[T]he gross income of both parents shall first be determined and combined. Each parent's share of the combined total gross income is then determined based on their percentage of the combined income. Next, the basic child-support obligation is determined by looking at the Chart for the parties' combined income and the number of children they have. A presumptive child-support obligation is then determined by adding the allowed additional monthly child-rearing expenses (including health insurance premiums,

5

extraordinary medical expenses, and childcare expenses). Each parent's share of additional child-rearing expenses is determined by multiplying the percentage of income they have available for support, which was determined in step 1. The total child-support obligation for each parent is determined by adding each parent's share of the child-support obligation with their share of allowed additional child-rearing expenses.

*Id.* at 13. The order stipulates, however, that the maximum combined parental gross income is $30,000. *Id.* at 3. "The child-support obligation for incomes above $30,000.00 per month shall be determined by using the highest amount in these Guidelines." *Id.* Even so, the circuit court can still set a child-support obligation that exceeds the maximum: "the court may then use its discretion in setting an amount above that to meet the needs of the child and the parent's ability to provide support." *Id.*

Further, the order provides guidelines for a circuit court to follow when deciding whether to deviate from the guidelines. That section warns that "deviation from these Guidelines should be the exception rather than the rule." *Id.* In making a deviation, the court must explain its reasons in writing and should consider the following factors:

a. Educational expenses for the child(ren) (i.e., those incurred for private or parochial schools, or other schools where there are tuition or related costs) and/or the provision or payment of special education needs or expenses for the child(ren);

b. The procurement and/or maintenance of life insurance, dental insurance, and/or other insurance for the children's benefit (for health insurance premiums, see Section II.2 infra);

c. Extraordinary travel expenses for court-ordered visitation;

d. Significant available income of the child(ren);

e. The creation or maintenance of a trust fund for the children;

f. The support given by a parent for minor children in the absence of a court order;

g. Extraordinary time spent with the payor parent;

h. Additional expenses incurred because of natural or adopted children living in the home, including stepchildren if the court finds there is a court-ordered responsibility to a stepchild;

i. The provision for payment of work-related childcare, extraordinary medical expenses for the child in excess of $250.00 per year per child, and/or health insurance premiums. Ordinarily, these expenses will be divided pro rata between the parents and added to the base child support of the payor parent on the Worksheet. In that scenario, it shall not support a deviation. However, if the court chooses not to add them in the total child-support obligation, they could support a deviation; and

j. Any other factors that warrant a deviation.

*Id.* at 4–5.

## V. *Analysis*

The circuit court's finding that Parnell's gross monthly income was $36,849 and that Butler's gross monthly income was $1733.60 is not disputed. The parties' combined total monthly income was $38,582.60, with Parnell contributing 95.51 percent and Buter contributing 4.49 percent. Because their combined income exceeded the highest amount provided in child-support chart, their joint obligation was that provided for a $30,000 monthly income: $1952. And because Parnell was the payor parent, his presumptive child-support obligation was 95.51 percent of that amount, or $1864.36. However, we conclude that the circuit court erred in calculating Parnell's child-support obligation in the following ways.

First, when a parent's income exceeds the maximum chart amount of $30,000 per month, revised Administrative Order No. 10 does not allow the circuit court to simply add 15 percent of one parent's income to his or her child-support obligation. While we recognize that this was permissible under previous versions of the child-support chart, the circuit court's ruling in this case constitutes a clear error of law.

Second, we hold that the circuit court's findings in support of its decision to upwardly deviate from the child-support chart are not consistent with the plain language of revised Administrative Order No. 10. The court listed three "other factors" it relied on: (1) Butler's own needs; (2) EPB's age of sixteen; (3) Parnell's having saved enough money to pay support through EPB's eighteenth birthday. Citing these three considerations as "other factors" was an abuse of discretion. The first, Butler's own needs, is not a legitimate factor to consider when deviating from the chart. Child support should focus on the child's needs, not the custodial parent's needs. The second consideration was EPB's age, which, standing alone, did not justify an increased obligation. We have said the same thing about the previous chart: "We note only that neither the statute, nor the Child Support Guidelines, offer any distinction based on the child's age as a basis for deviation from the guidelines." *Smith v. Smith*, 341 Ark. 590, 595, 19 S.W.3d 590, 594 (2000). Revised Administrative Order No. 10 makes no distinction about a child's age, either. Certainly, an increase in a child's expenses as he or she gets older may justify a deviation. But the court's order here lacked findings that tied the child's increased age to increased expenses. Finally, the fact that Parnell was a prudent saver does not justify the court's increase of Parnell's monthly obligation. We

8

therefore reverse and remand this case to the circuit court for further findings consistent with this opinion.

Reversed and remanded.

WOOD, J., concurs.

WYNNE, J., dissents.

RHONDA K. WOOD, Justice, concurring. We accepted this case from the court of appeals because it is the first involving the new income-shares support chart when a parent's monthly income exceeded the chart's maximum income level. I agree that the circuit court erred for the reasons stated by the majority. But I concur because this court should not remand for further findings. We should instead remand with instructions for the circuit court to set a specific child-support amount.

We took that path in *Cochran v. Cochran*.[1] There, the circuit court awarded $60 per week in child support after concluding that the chart-required amount of $78 per week was unreasonable. But we reversed and remanded on this point and ordered the circuit court to enter an order adopting $78 as the appropriate amount because the record compelled no other conclusion: "we regard the record here as sufficiently developed to enable us to determine that the chart amount of $78 stands unrebutted by factors which would render such amount unjust."[2] We should follow the *Cochran* approach here.

---

[1] 309 Ark. 604, 832 S.W.2d 252 (1992).

[2] *Id.* at 607, 832 S.W.2d at 254.

Practical reasons support this course too. The circuit judge who heard this case retired at the end of 2020.[3] On remand, a new judge will have to get up to speed on this matter. That will require a full review of the case file and the transcripts, duplicating the work this court has already done on de novo review. The new judge might also conduct a new hearing—the majority's mandate doesn't prohibit it. And by the time we issue the mandate, the circuit court holds a hearing, and the parties make their arguments, the child may have turned eighteen years old.[4] Is this the best use of judicial resources with a backlog of cases statewide?

The dissent suggests the parties can develop facts on remand about previously undiscussed expenses like a car and car insurance. Yet the child wasn't old enough to drive when the hearing took place. This is why we should remand with specific instructions rather than order more findings or tempt the parties to relitigate an established record. The parties should not develop new facts that would retroactively justify the circuit court's child-support award. The record either supported the award or it didn't.

I also strongly dispute the dissent's view that it's appropriate for a court to act punitively toward a noncustodial parent who saves money to pay for support should his income suddenly decrease. If that were the law, Parnell might have been better off buying more sports cars or houses rather than saving for child support once his NFL career ended. That's certainly true if a circuit court could—as happened here—increase child support to an

---

[3]*In re Retirement of Circuit Judges*, 2020 Ark. 373 (per curiam).

[4]The child turns eighteen on July 12, 2022.

amount that exceeded the custodial parent's monthly expenses by $1500. I prefer the example Parnell set for his son by saving prudently and investing his money. I would not deter other noncustodial parents from acting similarly.

**ROBIN F. WYNNE, Justice, dissenting.** My de novo review of the record does not reveal an abuse of discretion in the amount of child support awarded under the unique facts of this case. Therefore, I respectfully dissent.

In this appeal, it is undisputed that appellant's gross monthly income is $36,849 and that he has absolutely no debt. No mortgage, no car payments—nothing in the way of monthly obligations other than child support. Furthermore, appellant has substantial assets. The revised Guidelines

> provide calculated amounts of child support for a combined parental gross income of up to $30,000.00 per month, or $360,000.00 per year. The child-support obligation for incomes above $30,000.00 per month shall be determined by using the highest amount in these Guidelines. The court may then use its discretion in setting an amount above that to meets [sic] the needs of the child and the parent's ability to provide support.

*In re Implementation of the Revised Administrative Order No. 10*, 2020 Ark. 131, at 3 (per curiam). Revised Admin. Order No. 10 lists ten factors a court should consider when determining whether to deviate from the Guidelines' amount. *Id.* at 4–5. These factors address the above-referenced "needs of the child" and "parent's ability to provide support." The final factor is a catchall—"[a]ny other factors that warrant a deviation." The order also provides that "[a] deviation from these Guidelines should be the exception rather than the rule." *Id.* at 4.

Here, the needs of the child are those of a typical sixteen-year-old, and the appellant's ability to pay is extraordinary. The circuit court found that an upward deviation is in EPB's best interest. The court cited the custodial parent's needs, the child's age (sixteen), and the fact that appellant has set aside funds to pay child support for his son through his eighteenth birthday. While the majority takes issue with each of these factors, I see no reversible error. The needs of the child's mother are not technically a factor to consider, but the circuit court was no doubt recognizing that a minor child's needs are inextricably linked to the resources of his custodial parent. Stated another way, the circuit court was properly considering the custodial parent's needs in supporting the child. Further, a sixteen-year-old's reasonable needs could include expenses such as a computer, a cell phone, a vehicle, and insurance on the vehicle. Finally, appellant's savings are a factor in his ability to pay support—just as any custodial parent's savings are a factor in his ability to provide for the reasonable needs of his child.[1]

As the circuit court recognized, child-support payments to a custodial parent should not allow wealth accumulation. *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000); *Davis v. Bland*, 367 Ark. 210, 238 S.W.3d 924 (2006). That said, the amount of child support required to meet the reasonable needs of a child is an inherently discretionary decision. An

---

[1]Unlike the concurring justice, I do not view a circuit court's award of child support as "punitive."

abuse of discretion is a high threshold that does not simply require error by the circuit court, but requires that the court act improvidently, thoughtlessly, or without due consideration. *GSS, LLC v. CenterPoint Energy Gas Transmission Co.*, 2014 Ark. 144, 8, 432 S.W.3d 583, 588.

In sum, the majority is correct that the circuit court erred in adding 15 percent of appellant's income above $30,000 to his presumptive child-support amount.[2] But we have the entire record before us and are asked to review the amount of child support awarded. Because I see no abuse of discretion in the circuit court's determination that an upward deviation to $6,500 a month was appropriate, I would affirm.

I respectfully dissent.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren Hoover*, for appellant.

*Gil Dudley*, Arkansas Dep't of Finance and Administration, Office of Child Support Enforcement, for appellee.

---

[2]The previous version of Administrative Order Number 10 provided: "[t]o compute child support when income exceeds the chart, add together the maximum . . . monthly chart amount, and the percentage of the dollar amount that exceeds that figure," using a percentage of 15% for one dependent. Admin. Order No. 10, § III(b) (2019).