Cite as 2022 Ark. App. 500

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-21-563

| | | |
|---|---|---|
| CHARITY GRAHAM | | Opinion Delivered December 7, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30DR-04-200] |
| MATTHEW SEXTON | | |
| | APPELLEE | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Charity Graham appeals from an order of the Hot Spring County Circuit Court granting her petition for a change of custody. Her sole point on appeal is that the circuit court's refusal to retroactively modify child support was clearly erroneous. We hold that the court's decision was not clearly erroneous and affirm.

Charity Graham and Matthew Sexton were divorced in 2007, and primary custody of the parties' two children was awarded to Charity. An agreed order entered in 2018 modified custody, placing primary physical custody of MC1 (Minor Child 1) with Matthew and primary physical custody of MC2 (Minor Child 2) with Charity. The parties agreed there would be no child support paid for MC1, and Matthew was ordered to pay $250 a month in child support to Charity for MC2.

The case on appeal began on September 22, 2020, when Charity filed a petition for change of custody and additional relief requesting primary custody of MC1. Although an attorney initially represented Matthew and filed an answer to Charity's petition, Matthew represented himself pro se for the remainder of this case and has not filed a brief in this appeal. Charity was represented by her husband, who is a lawyer and the children's stepfather. In her petition, Charity alleged that the parties had generally cooperated regarding the children but stated that visitation and communication issues had arisen shortly after Matthew married Emily in 2019, that Emily "bad mouths" Charity in front of the children, and that these issues constituted a material change in circumstances justifying a change of custody for MC1. These issues were detailed in eleven enumerated paragraphs in the petition. Charity summed up her request as follows:

> 12. For the reasons enumerated herein, Plaintiff respectfully requests that primary physical custody of the parties' minor child, [MC1], be transferred to her, *that she be awarded child support for both children commensurate with the Arkansas Family Support Chart*, and that Defendant's visitation be sufficiently specified.

> 13. A Motion for Appointment of an Attorney Ad Litem is being filed contemporaneously herewith.

> WHEREFORE, Plaintiff, CHARITY SEXTON (Now GRAHAM), respectfully requests that her Petition for Change of Custody be granted; that she be awarded custody of [MC1]; that Defendant be ordered to pay ½ of all medical out of pockets and co-pays; *that Defendant be ordered to pay a reasonable sum of child support for both children*; that the parties visitation be specified; for her costs and fees incurred herein; and for all other just and proper relief to which she may be entitled at law or equity.

(Emphasis added.)

In his answer and response to Charity's petition, Matthew did not object to the appointment of an ad litem, denied the detailed allegations in the petition, alleged that any material change was attributable to Charity, alleged that Charity's "erratic and explosive behavior" had influenced the parties' relationship, pled the affirmative defense of unclean hands, and asked the court to deny and dismiss the petition. His attorney withdrew from the case shortly thereafter. The circuit court scheduled a hearing in the case on July 19, 2021. On July 13, Matthew filed an untitled pro se document that included the following points:

- We are not seeking custody of [MC1]
- We do not wish to have visitations with [MC1] at this time
- We are asking the court to recognize that there would be no child support exchanged for [MC1] per the previous custody order. Therefore, there is no back support owed on a child it was agreed there is no support exchanged.

Matthew continued by stating that he would continue to pay the $250 in child support for MC2 until MC2 turned eighteen in September and would like the court to designate an amount of support for MC1 from August until July 2023, when MC1 presumably would be eighteen and have graduated from high school. He also alleged that Charity had disparaged Emily and reached out to Emily's minor children and their fathers, and he asked the court to forbid Charity from posting about him, Emily, or Emily's children on social media.

On July 14, five days before the hearing, Charity responded to Matthew's filing, acknowledging that Matthew was not contesting custody of MC1 "as [Matthew] has voluntarily allowed [MC1] to remain in [Charity's] sole custody since January 6, 2021." Charity asked the court to award "retroactive child support" for MC2 from September 22,

2020—the date she filed her petition for custody of MC1—and for both children from January 6, 2021—the day MC1 moved in with her.

Because the parties had voluntarily resolved the custody issue, child support was the only issue before the court at the July 19 hearing. Matthew, representing himself, began by stating: "Well, if we're not going to talk about how they stole [MC1] from me, then I'm just here to pay what I need to pay and move on." The parties agreed that child support should be set by the court according to the prevailing child-support chart but disagreed whether it should be retroactive.

Charity testified that she breeds French bulldogs for a living and that she started the business in 2020. After her lawyer questioned her, the court asked whether her affidavit of financial means was true and correct and accurately represented what she made in 2020, and Charity said yes. The court asked her to "solemnly swear" to this, which she did. Charity said she had lost money in 2020 because starting the business required her to spend money to buy the bulldogs and pay the vet bills and other expenses before she could breed them. The court asked her what she did before she bred bulldogs, and Charity said she worked at the Graham Law Firm but was not paid for her services. The court then questioned her specifically about her bulldog business. She said she had begun by helping an elderly couple with their bulldogs and "was really good at it." She said that she worked for this couple for a while, but they did not pay her, so "we had to sue them." She explained that the couple had promised to give her a bulldog worth $15,000 in exchange for her work, but they then kept the bulldog. She said the court awarded her a judgment of $7200, which the couple

4

sent to her last month. The court asked Charity why she did not disclose this in her affidavit or when Mr. Graham questioned her on direct examination. She said she received the check after she turned in her affidavit.

The court then questioned Matthew about his affidavit and financial documents. He said the numbers were correct, but he was not exactly sure what "they were asking for." He explained that he gets VA disability, and in some states, VA disability is excluded from child-support calculations, and in some states it is not. The court marked the affidavit as an exhibit, placed the names and style of the case on the document, and asked him to finish filling it out and add his VA disability income while the court took a recess. The court reviewed the affidavit again and, after more questioning, asked Matthew to make additional changes that included his expenses and debt.

The court then questioned Charity again and asked her about gross sales receipts of $1600 on her tax return. She said she was not sure if it was from the sale of a puppy but that it must have been from a puppy sale; and that she isn't good with numbers, has a "brain tumor," and could not even remember what year it is. She then remembered that it was payment for photos she had taken to market the elderly couple's bulldogs.

Finally, the court indicated that it had the information it needed to fill out the worksheet to determine child support, noting that it sometimes needed to "oversee" the information provided by pro se litigants because they often did not know how to complete the documents. On the record, the court then denied Charity's request for retroactive child support, reasoning that the hearing was delayed due to COVID and that Charity had

"unclean hands." Specifically, the court said Charity failed to disclose her income on direct examination, and "only on responses of inquiry of the Court" did it discover the $7200 judgment. The court also said that she failed to calculate into her affidavit $6600 she had earned from real estate and $1600 she had earned from taking photographs, causing the income on her affidavit of financial means not to be a true figure. The court stated that "when somebody comes before the Court and they're represented by counsel, they should truthfully fill out their documentation as to what's going on." The court asked Mr. Graham to prepare an order.

The court entered an order on July 29 granting Charity's request for a change in custody and modifying child support commensurate with this change and the child-support chart and worksheet. The court denied retroactive support, finding Charity had unclean hands. The court ordered Matthew to pay support of $955.91 a month for the months of August and September 2021 based on income of $6358.70 for Matthew and $3120 for Charity and two minor children. The court presumed income from Charity's previous employment as a legal secretary for her husband, Mr. Graham, at $18 an hour for a forty-hour week. The court also noted that Walmart is paying educated employees with experience between $17 and $19 an hour with a signing bonus, stating that the "presumed amount is not unreasonable." The court awarded child support of $667.45 a month after September when MC2 turns eighteen.

Charity filed a motion for reconsideration asking the court to reconsider its denial of retroactive child support. On August 26, the court held a hearing on the motion. At the

hearing, Mr. Graham argued that unclean hands was not appropriate because Charity completed the affidavit of financial means in April 2021, and the $7200 judgment was not awarded until a month later. He also contended that Charity did not consider the judgment to be income because it was compensation for a dog. He argued that there was no intent to defraud the court as he claimed was required for unclean hands.

The court noted that both Mr. Graham and Charity had signed the affidavit, which mandated that they review the document before each court hearing and provide updated information to the other party and the court. Mr. Graham agreed that he was aware of the mandate but argued that it was not income. The court said simply that it was failure to disclose. The court also stated an additional reason for denying retroactive support, finding specifically that Charity failed to plead it. The court stated, "[T]here is absolutely no request that this Court could have entertained concerning back child support and it's denied." The court noted that Charity's initial pleading did not address the issue of retroactive child support, which was not mentioned until her response was filed to Matthew's pro se statement five days before the hearing. The court found that Charity's response did not constitute an affirmative pleading because it was not a claim, a cross-claim, a counterclaim or even an affirmative request for back child support, noting that what Charity wants and what she pled "are two different things." The court found that the language in paragraph 12 of Charity's petition requesting child support commensurate with the child-support chart was simply a request for support, not retroactive child support.

7

The court entered an order on August 27, again denying Charity's request for retroactive child support. The court denied it for two reasons: first, it found Charity appeared before the court with unclean hands, and second, it found that she failed to plead affirmatively for back child support. The court also modified its original order by reducing Charity's gross income to $2600 a month and Matthew's gross income to $5616 a month and calculating child support for one child at $742.33 a month. No explanation was given for the change. Charity filed this appeal, challenging the court's denial of her request for retroactive child support.

The standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Symanietz v. Symanietz*, 2021 Ark. 75, 620 S.W.3d 518. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and that court's findings will not be reversed absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, a circuit court's conclusions of law are given no deference on appeal. *David v. David*, 2022 Ark. App. 177, at 11, 643 S.W.3d 863, 869.

We turn first to Charity's contention that the circuit court clearly erred in finding that she failed to affirmatively plead for retroactive child support. She argues that her initial pleading recognized that Matthew was already paying child support, which is the reason she

8

requested a modification of child support rather than retroactive support. She points to language in her petition asking that she be "awarded child support for both children commensurate with the Arkansas Family Support Chart" and in her responsive pleading filed five days before the hearing asking for support from the date she filed her petition. We cannot say the circuit court clearly erred in finding that this did not constitute an affirmative pleading for back support. The petition requested a change in custody and, in summation, a modification of child support commensurate therewith. There was no request for back child support. Furthermore, her reply to Matthew was a responsive pleading, not an affirmative pleading.

Charity also cites Ark. Code Ann. § 9-14-107(d) (Supp. 2021), providing that any modification of a child-support order shall be effective as of the date of service on the other party "of the file-marked notice of a motion for increase or decrease in child support[.]" The operative language here is a motion for an increase or decrease in child support. Charity filed a petition for a change in custody. This statute is titled "Change in income warranting modification" and concerns petitions for a modification in child support based on a material change in the gross income of the payor or payee parent. Charity's petition requested a change in custody. Nowhere in the petition did she allege that either party had a change in his or her gross income warranting a modification of child support. A request for child support "commensurate" with the custody change according to the Arkansas Family Support Chart is not a request under this statute.

Because we hold that the circuit court did not clearly err in denying Charity's request for retroactive support for not being affirmatively pled, we need not address the court's alternative reason of unclean hands. We note, however, that we review a circuit court's application of the clean-hands doctrine for an abuse of discretion, *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991) and, further, that Charity's arguments regarding the requirements for findings of fraud and constructive fraud are not applicable here. We also are not persuaded by her argument that Matthew was equally at fault in failing to disclose information; thus, the court's finding of unclean hands on her part was uneven. The court noted three examples of nondisclosure on Charity's affidavit: real estate income of $6600; income from taking photos of $1600; and the $7200 judgment. The circuit court also recognized that Charity was represented by counsel, her husband, and Matthew was pro se. We give great deference to the circuit court's superior position to judge the credibility of the witnesses. *Buskirk v. Buskirk*, 2018 Ark. App. 417, at 5, 559 S.W.3d 285, 288. The Arkansas Supreme Court has held that there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry a greater weight than one involving the custody of minor children. *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001). The court did not abuse its discretion.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*The Graham Law Firm*, by: *James Lucas Graham*, for appellant.

One brief only.